PETTIT v. BOARD OF CHOSEN FREEHOLDERS OF CAMDEN COUNTY.

(District Court, D. New Jersey. June 10, 1898.)

DEMURRAGE—DETENTION OF VESSELS IN RIVER—BREAKAGE OF COUNTY DRAW-BRIDGE.

A county is not liable for detention of vessels in a river by breakage of the machinery operating a draw in a county bridge, where it does not appear that there was any negligence by the county's agents or servants, or any unreasonable delay in making repairs.

This was a libel in personam by Charles A. Pettit, agent, against the board of chosen freeholders of the county of Camden, N. J., to recover damages for the detention of certain vessels by the breakage of a county drawbridge.

Joseph Hill Brinton, for libelant.
Henry S. Scovel, for respondent.

KIRKPATRICK, District Judge. The libel in this case is filed to recover damages for the detention of the schooner Oscar G. Schmidt, and the steam tugs Israel H. Duncan and Laura, in Cooper creek, Camden county, in this district. It appears from the record that on February 17, 1897, the schooner, in tow of the tugs, passed up the creek through the draw of the bridge which spans the same; and that upon their return trip they were unable to pass through the bridge. The cause of the failure was that, in attempting to open the draw, the main casting, which operated the pivot on which the draw swung, broke. It is charged that this breakage was due to the careless and

negligent conduct of the servants of the respondent, and that they failed to have the same repaired within a reasonable time. The evidence fails to substantiate either of these charges.

The piers of the bridge had been injured by floods, and had been recently repaired. The ends had been raised a little too high, and the draw bound on the same, but at the time the accident occurred this difficulty was being remedied. The accident seems to have been caused, as testified to by a witness engaged in attempting to move it, by some foreign substance, as a stone getting fast in the moving mechanism, thereby causing it to break. After the breaking of the machinery for turning the draw, the captain of one of the tugs offered to attach a hawser to the end of the draw and pull it open, but the keeper declined to permit it to be done, fearing additional injury to the bridge. It is not shown on the part of the libelant that it would have been practicable to have safely opened the draw by the means suggested, while competent mechanics, after personal examination of the injury, testify, on the part of the respondent, that it would not have been safe to have allowed the tug to pull the draw open immediately after the accident, nor could the draw have been opened by any means until after the broken castings had been moved, which required two or three hours' work by skilled labor. The man in charge of the bridge immediately notified the chairman of the bridge committee of the freeholders, and, under authority from him, took the proper steps to repair the damage at once. The accident happened at 3 or 4 o'clock p. m. The mechanics came at the usual working hour on the following morning, and at about 9:30 o'clock the passage for the boats was free. I am of the opinion that the evidence fails to show carelessness or negligence on part of respondent or its agents, or that the bridge was not repaired and the draw opened with all reasonable dispatch. The libelants cannot recover.