PETTIT v. BOARD OF CHOSEN FREEHOLDERS OF CAMDEN COUNTY, NEW JERSEY.

(Circuit Court of Appeals, Third Circuit. January 13, 1899.)

NAVIGABLE WATERS—BRIDGES—NEGLIGENCE IN MANAGEMENT.

In attempting to open a drawbridge maintained by the county across a navigable stream, for the passage of a vessel in tow of tugs, the casting which moved the bridge broke. The bridge tender then refused to permit the tugs to swing the bridge, and the vessels were delayed from 3 o'clock in the afternoon until 10 o'clock the following morning, until repairs could be made. It appeared that the tender had complained to the county board that the bridge was difficult to swing, and workmen had been sent to repair it, whose defective work caused the breakage. *Held,* that none of such facts established negligence on the part of the county

authorities or their servants which rendered them liable in damages for the delay of the vessels.

Appeal from the District Court of the United States for the District of New Jersey.

Joseph Hill Brinton, for appellant.
Henry S. Scovel, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUTLER, District Judge.

DALLAS, Circuit Judge.   The nature of this case as it was presented in the court below is sufficiently stated in its opinion (87 Fed. 768), as follows:

"The libel in this case is filed to recover damages for the detention of the schooner Oscar G. Schmidt and the steam tugs Israel H. Duncan and Laura, in Cooper creek, Camden county, in this district. It appears from the record that on February 17, 1897, the schooner, in tow of the tugs, passed up the creek through the draw of the bridge which spans the same, and that upon their return trip they were unable to pass through the bridge. The cause of the failure was that, in attempting to open the draw, the main casting, which operated the pivot on which the draw swung, broke. It is charged that this breakage was due to the careless and negligent conduct of the servants of the respondents, and that they failed to have the same repaired within a reasonable time."

The court below, being of the opinion that the evidence failed to show negligence on the part of the respondents or their agents, or that the bridge was not repaired and the draw opened with all reasonable dispatch, entered a decree dismissing the libel, with costs, and the case is now before us on appeal from that decree.

The appellant, in his brief, rests his contention upon the proposition "that the respondents were negligent (1) In that they had notice of the defective condition of the drawbridge for some time prior to the detention, and failed to have it mended; (2) that the boats were unnecessarily and unreasonably detained, by reason of the keeper's refusal to have the draw opened; and (3) in that the respondents were unquestionably tardy in having the draw opened."

This proposition, in each of its parts, asserts matter of fact which could not, in any instance, have been found from the evidence.   It does not appear that the respondents had knowledge of any defective condition of the drawbridge which contributed to cause the delay complained of.   The report which had been made by the bridge tender to the board of freeholders was not of any condition of the bridge which interfered with navigation, but only of its "binding," and making his "duty onerous."   The delay resulted from the breaking of a casting, and this was caused, not by a failure of the respondents to act upon the complaint of the bridge tender, but by the defective manner in which the workmen who were employed, two or three days before the casting broke, to remedy the quite distinct subject of the bridge tender's complaint, had performed their work.   There is nothing to show that the board of freeholders did not suppose, or that they were not justified in supposing, that the repairs which they had ordered had been properly made.   Under

these circumstances, the court below was unquestionably right in holding that negligence could not be ascribed to them by reason of the existence of a defective condition of the drawbridge which they knew but made no effort to remedy. There is nothing in the evidence which would have justified a finding that the bridge tender violated any duty which was owing to the appellant, by refusing to allow the tug to open the bridge. So far as appears, he honestly believed that, if the tug were permitted to attempt to swing the bridge, it would be likely to cause further breakage. He had a right to exercise his best judgment upon the subject, and would have been derelict if he had not done so; and, indeed, we see no reason to doubt that the judgment which he acted upon was a just one. There was no lack of diligence in causing the bridge to be opened. The period which ensued, from 3 o'clock in the afternoon of one day until before 10 o'clock the next morning, was not an unreasonable one, under the circumstances. The decree of the district court is affirmed.